FILED
DALLAS COUNTY
10/11/2016 6:06:23 PM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

CAUSE NO. DC-16-13375

| | | |
|---|---|---|
| HALL ARTS CENTER OFFICE, LLC, | § § | |
| Plaintiff, | § § | IN THE DISTRICT COURT OF |
| v. | § § | |
| HANOVER INSURANCE COMPANY | § § | |
| Defendant. | § | ____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

COMES NOW Plaintiff HALL ARTS CENTER OFFICE, LLC and files this Original Petition complaining of Defendant HANOVER INSURANCE COMPANY and for causes of action would respectfully show the Court and Jury as follows:

#### DISCOVERY

1. Plaintiff intends to conduct discovery under a Level 2 discovery control plan pursuant to Texas Rule of Civil Procedure 190.3, and affirmatively pleads that it seeks monetary relief of over $1,000,000.

#### PARTIES

2. Plaintiff HALL ARTS CENTER OFFICE LLC ("Hall Arts") is a Texas limited liability company, with its principal place of business in Dallas County, Texas. Hall Arts is engaged primarily in the business of commercial real estate.

3. Defendant HANOVER INSURANCE COMPANY ("Hanover"), is an insurance company organized under the laws of New Hampshire, with its principal place of business in Worcester, Massachusetts. Hanover is qualified to, and is conducting and transacting, business in Dallas County, Texas.


EXHIBIT A

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this lawsuit, because it is a court of general jurisdiction and the amount in controversy exceeds the Court's minimum jurisdictional requirements.

5. The Court has personal jurisdiction over Hanover because it has purposefully availed itself of the privilege of conducting business activities within the State of Texas and purposefully established more than minimum contacts with the State of Texas by conducting and doing business in the State of Texas, including with Hall Arts.

6. Venue is proper in this Court under Texas Civil Practice & Remedies Code Section 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County. Venue is also proper in this Court under Texas Civil Practice & Remedies Code Section 15.002(a)(4) because Hall Arts resides currently and resided in Dallas County at the time of accrual of the causes of action alleged herein.

## FACTS

7. This is an insurance coverage lawsuit in which Hall Arts seeks to enforce Hanover's obligations under (1) the Delay in Completion Coverage Part (which includes Rental Income and Income Coverage) of Hanover's Commercial Property policy number IHD 9935566 00, in effect from August 22, 2013 to March 8, 2015 (the "Policy"), and (2) Texas law to timely investigate and respond to its policyholder's request for coverage and to pay its policyholder's claim. Rather than comply with its duties to Hall Arts, Hanover for many months did not appear to conduct any reasonable investigation of Hall Arts' coverage claim that is at issue in this lawsuit, including of the information produced to Hanover from the outset. Instead, Hanover repeatedly (1) requested information already provided to it, and (2)

changed the playing field of the information it claimed was necessary to evaluate the claim. Hanover also unreasonably delayed in providing any coverage position, at all, to Hall Arts despite its legal duty to timely respond and particularly because based upon the information provided to Hanover, Hanover's policy duties to pay for the claim were fairly clear, and then when it purported to take a position, Hanover misstated the applicable facts and documents to reach an unsupported conclusion regarding coverage.

8. This claim arises out of weather-related damage to portions of a Hall Arts eighteen (18) story office building, located at 2323 Ross Ave., Dallas, Texas, that occurred during the construction of the building. In particular, on October 13, 2014, rainwater infiltrated openings in the temporary roof on the project and caused damage to one of the "bus ducts" (a sheet of metal duct containing either copper or aluminum busbars for the purpose of conducting a substantial current of electricity—it is an alternative means of conducting electricity to power cables). The bus duct at issue was called Bus Duct B, and the damage to it caused a serious delay in Hall Arts' ability to complete the necessary work that would trigger building tenants' obligations to commence paying rent. As a direct result of this delay, Hall Arts has suffered a substantial loss of rental and other income for which it timely informed Hanover and sought recovery.

9. On or about April 2, 2015 Hall Arts submitted a claim for the cost of work to fix the bus duct valued at $981,407. Hanover received extensive information in connection with this "hard costs" claim. Then, on June 11, 2015, Hanover met with Turner Construction ("Turner"), the general contractor for the construction project, to settle the hard costs claim and in that context made clear to Hanover that any settlement would be for hard costs only, as Hall

Arts had also suffered financial loss due to the construction delay and would need to assess any claim for "soft costs" and loss of rental income.

10. Despite this fact, when Hanover sent checks to Hall Arts for settlement of the claim for hard costs, the checks contained the language "full and final bus duct water claim settlement" and "full and final delay settlement." Hall Arts returned the checks to Hanover on June 29, 2015, stating, "We are still in the process of assessing a claim for Soft Costs and Rental Income under Delay in Completion Coverage Part," and explained that it could not cash the checks as written. On July 9, 2015, Hanover verbally informed Hall Arts that it could cash the checks containing the release language without fear of waiving any additional claim it might have. Uncomfortable with this, Hall Arts requested Hanover to reissue the checks without the release language or confirm in writing that the cashing of them would in no way impair its rights for an additional claim for soft costs. Despite Hall Arts' request, Hanover again sent the checks to Hall Arts with release language. On July 17, 2015, Hall Arts once again asked Hanover for a written acknowledgement that Hall Arts' rights would not be impaired. Hanover finally acknowledged this fact in writing. Only after receiving this written acknowledgement did Hall Arts cash the checks for its hard costs.

11. On July 17, 2015, Hall Arts also provided Hanover, through its counsel, with construction related information. More specifically, in response to Hanover's request, Hall Arts provided Hanover's counsel with an August 7, 2014 Master Schedule, September 4, 2015 Master Schedule, and "meeting notes" 47-49 and 51 to 60. Hall Arts sent this information long before submitting its claim at issue in this lawsuit—Hall Arts' claim for soft costs and loss of rental income.

12. On November 10, 2015, Hall Arts submitted its claim for soft costs and loss of rental income. The claim filled two binders and contained nine exhibits and twenty-two attachments. The exhibits included: Summary of Loss, Analysis of Builders Risk Loss, Additional Construction Expenses Summary, Additional Soft Costs Summary, Summary of Lost Rental Income, Analysis of Rental Income, Analysis of Rental Income Delay Period, General Administration Expense Summary, and Interest Expense Summary. The attachments included leases, rent rolls, profit and loss statements, construction loan agreements, and a loan summary, among other things. This substantiating information was in addition to that already in Hanover's possession from negotiation and settlement of the hard costs claim and documentation provided in response to Hanover's counsel's request.

13. On November 16, 2015, Hanover acknowledged receipt of the claim. However, on December 3, 2015, Hanover stated that no coverage determination could be made. Notably, it did not then request additional information. More than two weeks later, on December 18, 2015, Hanover requested construction schedules for June, July, August, October, November, and December of 2014 and bi-weekly meeting notes for the months of July, September and October of 2014. Hanover then acknowledged that it had the September 2014 schedule.

14. On December 30, 2015, Hall Arts provided the requested schedules that were in existence (June, July, August--despite the fact they had already been provided to Hanover's counsel--and December of 2014). Hall Arts confirmed that there were no construction schedules for October or November of 2014. Hanover responded on January 14, 2015, stating that the claim "cannot be properly evaluated due to incomplete information." Hanover again requested schedules for the months of September, October, November and December of 2014, despite the fact that each of these schedules had either been provided or confirmed to not exist.

5

Hanover also took the position at that time that it was the "schedules during and immediately after the loss date" that are needed to accurately evaluate the delay claim. Hanover later, without explanation, changed the purported scope of necessary information.

15. On March 4, 2016, Hall Arts reiterated that the requested information in existence had already been provided to Hanover, and suggested a meeting with Hanover's consultant to answer any questions reasonably necessary to resolve payment of the claim. On March 30, 2016, Hall Arts again asked Hanover if it was agreeable to a meeting. Hanover replied that it hoped to have a report soon and stated that then "we can discuss the possibility of a meeting, if warranted."

16. On April 6, 2016, approximately five months after Hall Arts submitted its claim, Hanover sent Hall Arts a "report" from its consultant. The report summarily concluded "that not enough information was provided to accurately review and evaluate the Loss of Business Income Claim," despite the facts that all information requested and in existence had been previously provided, and pursuant to that information, Hanover's liability to pay for Hall Arts' claim at issue herein was "fairly clear." Given all of the information in Hanover's possession, the fact that Hall Arts' consultants were able to evaluate a delay claim based upon that very same information, and the fact that Hall Arts had provided Hanover with all information requested and that existed, Hall Arts urged Hanover to again consider the information provided and agree to an in-person meeting in an effort to resolve the matter. Hanover did not respond.

17. Instead, Hanover switched consultants and sent Hall Arts a new "report" on June 7, 2016. The report, however, was nothing more than a list of questions and requests for additional documentation. For the first time, Hanover requested documentation through

6

"project completion," as opposed to "during and immediately after the loss date," as Hanover had originally claimed was necessary many months earlier.

18.  Despite the fact that documentation through completion is not necessary to analyze Hall Arts' covered claim, on August 3, 2016, Hall Arts responded to the questions posed by Hanover's consultant and provided sizable (and unnecessary) documentation through the online provider, Dropbox. This production included tenant leases, construction updates, daily construction logs, field observation reports, meeting minutes, pay applications, the Turner Construction Agreement, Fire Building Department Inspections, and manpower reports. Once again, Hall Arts went above and beyond what was required in cooperating with Hanover. Hanover has claimed that it did not receive tenant leases until it accessed the Dropbox documents on August 17, 2016. To the contrary, Hanover received such documents on November 12, 2015, and downloaded them on November 16, 2015.

19.  On August 16, 2016, after much urging on the part of Hall Arts, the parties finally met in-person. Then, on September 1, 2016, Hanover forwarded a letter from its consultant. This time, Hanover sought, for the very first time, documentation even beyond substantial completion, requesting change orders, notes, and other documents that post-dated substantial completion. Once again, Hanover attempted to reposition itself by broadening the timeframe of purportedly necessary information to include that which was clearly irrelevant to confirm Hall Art's claim for soft costs and loss of rental income.

20.  In short, Hall Arts made a total of five separate and substantial document productions. Yet, Hanover continues to claim that it does not have sufficient information to analyze the claim, while ignoring the information already produced to, but clearly not reviewed, by it. Each time Hall Arts produced information, Hanover claimed that a broader

7

timeframe and scope of information should be analyzed, in a needless fishing expedition in an attempt to excuse its delay and misconduct.

21. Apart from its payment of the hard costs claim, Hanover has refused for almost a year to make any additional payment, or even provide a coverage position. Instead, after multiple requests for a coverage position by Hall Arts, on September 9, 2016, Hanover sent what it purports responded to Hall Arts' request for a coverage acknowledgement. Instead of accepting coverage, Hanover neither affirmed or denied coverage but requested more documents and misstated the applicable facts, reflecting an ongoing unjustified refusal to effectuate a prompt, fair and equitable settlement of Hall Arts' outstanding claim, coverage for which is or should be reasonably or fairly clear to Hanover.

22. Hall Arts has performed fully its obligations under the Hanover policy, including payment of premiums, provision of notice and cooperation and all conditions precedent to Hanover's obligations under the Hanover policy have been fulfilled.

## CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT

23. Hall Arts incorporates the allegations set forth in Paragraphs 1-22 above, as if fully set forth herein.

24. A justiciable controversy exists between Hall Arts and Hanover regarding their respective rights and liabilities under the Policy.

25. Under the Texas Declaratory Judgment Act, Hall Arts respectfully requests that the Court make a declaration as to rights, status, and other legal relations existing between Hall Arts and Hanover under the Policy. *See* TEX. CIV. PRAC. & REM. CODE § 37.003-004.

26. Hall Arts seeks a declaration by the Court that the entirety of Hall Arts' soft costs and loss of rental income claim is covered by and should be reimbursed pursuant to the Policy.

## COUNT II - BREACH OF CONTRACT

27. Hall Arts repeats and incorporates by reference the allegations contained in Paragraphs 1-26 above, as though fully set forth herein.

28. Hanover had and has an affirmative obligation to pay for Hall Arts' softs costs and loss of rental income claim under the Policy.

29. Despite timely tender and demand therefor, Hanover has failed and refused without any reasonable basis to pay or reimburse all or any part or portion of Hall Arts' substantial soft costs and lost rental and other income for which it seeks coverage in this lawsuit. By its failure and refusal to pay for all or any part or portion of Hall Arts claim that is herein at issue, Hanover has materially breached the Policy. As direct and proximate result of Hanover's material breach of the Policy, Hall Arts has suffered, and is entitled to recover, direct, indirect, consequential and incidental unliquidated damages in an amount to be determined at trial, within the jurisdictional limits of the Court.

## COUNT III – VIOLATIONS OF CHAPTER 541 OF THE TEXAS INSURANCE CODE

30. Hall Arts repeats and incorporates by reference the allegations contained in Paragraphs 1-29 above, as though fully stated herein.

31. Hanover has engaged in unfair and deceptive acts in the business of insurance and violated Section 541.051(1) of the Texas Insurance Code by, among other things, making misrepresentations to Hall Arts concerning the Policy and the benefits promised therein.

32. Hanover has engaged in unfair and deceptive acts in the business of insurance and violated Section 541.060 of the Texas Insurance Code by:

   (1) misrepresenting material facts or policy provisions relating to coverage at issue;

   (2) failing to attempt in good faith to promptly and fairly settle where liability is fairly clear;

   (3) failing to properly provide reasonable explanation of basis of denials or refusal to perform;

   (4) failing in reasonable time to affirm or deny a claim; and

   (5) refusing to pay without conducting a reasonable investigation.

33. Hanover also engaged in unfair and deceptive acts in the business of insurance and violated Section 541.061 of the Texas Insurance Code by:

   (1) making an untrue statement of material fact;

   (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and

   (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

34. Hanover's violations of the Texas Insurance Code have produced and/or proximately caused actual damages to Hall Arts for which it now sues pursuant to Section 541.151(1) of the Texas Insurance Code.

35. Hanover's above-stated violations of the Texas Insurance Code were committed with actual awareness of the falsity, unfairness, or deceptiveness of these acts and practices and were thus "knowing," TEX. INS. CODE § 541.002(1). Therefore, Hall Arts seeks recovery of additional damages up to three (3) times the amount of actual damages pursuant to TEX. INS. CODE § 541.152(b).

### COUNT IV – VIOLATIONS OF CHAPTER 542 OF THE TEXAS INSURANCE CODE

36. Hall Arts repeats and incorporates by reference the allegations contained in Paragraphs 1-35 above, as though fully stated herein.

37. Hanover has breached its duty to promptly pay Hall Arts' claim at issue herein.

38. Hall Arts timely notified Hanover of Hall Arts' soft costs and loss of rental income loss and timely submitted the necessary information and documents to support Hall Arts' claim for recovery under the Policy from Hanover.

39. Hanover violated the prompt payment statute set forth in Texas Insurance Code Section 542.058 by failing to pay Hall Arts' claim at issue herein within sixty (60) days after receiving Hall Arts' claim and request for payment. As a result, Hall Arts has been damaged by paying on its own, without any financial assistance from Hanover, its loss at issue herein.

40. For the reasons stated above, Hall Arts requests that it have judgment against Hanover for the principal amount that Hanover owes, as well as Hall Arts' reasonable attorney's fees, interest on the amount of the claim at the rate of eighteen (18) percent a year as damages pursuant to Texas Insurance Code Section 542.060(a), pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief the Court deems appropriate.

### COUNT V—BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

41. Hall Arts repeats, and incorporates by reference the allegations contained in Paragraphs 1-40 above, as though fully set forth herein.

42. Hanover owes to Hall Arts a duty of good faith and fair dealing in connection with handling its obligations under the Policy regarding payment of covered claims.

43. Hanover has violated its duty of good faith and fair dealing by refusing to pay or reimburse Hall Arts' loss of rental income and soft costs claim, without a reasonable basis, and as a result of failing to conduct a timely and reasonable investigation. Hanover's liability for Hall Arts' loss at issue is reasonably clear. Hall Arts has suffered, and will continue to suffer, actual damages as a result of Hanover's breaches of the duty of good faith.

44. Hanover's acts or omissions in this regard were malicious, fraudulent, and/or grossly negligent, justifying the imposition of exemplary damages.

## COUNT VI — ATTORNEYS' FEES

45. Hall Arts repeats and incorporates by reference the allegations contained in Paragraphs 1-44 above, as though fully set forth herein.

46. As a result of Hanover's conduct in denying Hall Arts' coverage claim, Hall Arts was required to retain the services of attorneys to protect Hall Arts' rights and obtain contracted-for benefits under the Policy, and to cause Hanover to comply with its obligations under the Policy.

47. Hall Arts is entitled to recover its reasonable and necessary attorneys' fees in connection with its request for declaratory judgment (Count I) pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code.

48. In accordance with Section 38.002 of the Texas Civil Practice and Remedies Code, Hall Arts has presented its claims to Hanover. Therefore, pursuant to Section 38.001 *et seq.* of the Texas Civil Practice and Remedies Code, Hall Arts is also entitled to recover its reasonable and necessary attorneys' fees incurred in connection with its prosecution of Hanover's breaches of the Policy (Count II) in this lawsuit.

49. Hall Arts is further entitled to recover its reasonable and necessary attorneys' fees in connection with its prosecution of Counts III and IV relating to Hanover's violations of Chapter 541 and 542 of the Texas Insurance Code.

## JURY DEMAND

50. Hall Arts demands a jury and has tendered the appropriate fee with the filing of this Original Petition.

## PRAYER

WHEREFORE, Hall Arts requests Hanover be cited to appear and timely answer hereof and seeks judgment against Hanover, as follows:

1. On the First Count, Hall Arts seeks a declaration by the Court that that the entirety of Hall Arts' soft costs and loss of rental income claim is covered by and should be reimbursed pursuant to the Policy;

2. On the Second Count, that the Court award to Hall Arts direct, indirect, consequential and incidental unliquidated damages, with interest in the maximum amount allowed by law, to be determined at trial;

3. On the Third Count, that the Court award to Hall Arts: (i) direct, indirect consequential and incidental unliquidated damages, with interest in the maximum amount allowed by law, to be determined at trial; (ii) additional damages up to three (3) times the amount of actual damages pursuant to TEX. INS. CODE Section 541.152(b); and (iii) court costs and reasonable and necessary attorneys' fees pursuant to Texas Insurance Code Section 541.152 (a)(1);

4. On the Fourth Count, that the Court award to Hall Arts: reasonable attorney's fees, interest on the amount of the claim at the rate of 18 percent a year as

13

damages pursuant to Texas Insurance Code Section 542.060(a), pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief the Court deems appropriate;

5. On the Fifth Count, for reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code Sections 37.009 and 38.001; and

6. On all Counts, that the Court award Hall Arts its reasonable fees, all costs of court, and such other and further relief, general or special, whether at law or in equity, to which Hall Arts may show itself justly entitled.

### REQUEST FOR DISCLOSURE

Pursuant to Texas Rule of Civil Procedure 194, you are requested to disclose, within 50 days of the service of this request, the information and/or materials described in Rule 194.2.

Respectfully submitted,

**KASOWITZ BENSON TORRES & FRIEDMAN, LLP**

By: /s/ Constantine Z. Pamphilis
Constantine Z. Pamphilis
State Bar No. 00794419
700 Louisiana Street, Ste. 2200
Houston, Texas 77002
Tel: (713) 220-8800
Fax: (713) 222-0843
DPamphilis@kasowitz.com

ATTORNEYS FOR PLAINTIFF HALL ARTS